[Cite as *Maynard v. Winters*, 2012-Ohio-6286.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MICHAEL MAYNARD, ET AL. | : | JUDGES: |
| | : | |
| Plaintiffs-Appellants/Cross-Appellees | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| AULTCARE CORPORATION | : | Hon. John W. Wise, J. |
| | : | |
| Intervenor/Cross-Appellant | : | Case No. 2012 AP 05 0035 |
| | : | |
| -vs- | : | |
| | : | |
| THOMAS K. WINTERS, ET AL. | : | |
| | : | |
| Defendants-Appellees/Cross-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County Court
of Common Pleas, Case No. 2011 CT 07
0736

JUDGMENT:                              AFFIRMED

DATE OF JUDGMENT ENTRY:       December 26, 2012

APPEARANCES:

For Plaintiffs-Appellants/Cross-
Appellees:

SUBODH CHANDRA
DONALD P. SCREEN
1265 W. 6th St., Suite 400
Cleveland, OH 44114

For Intervenor/Cross-Appellant:

SHAUN D. BYROADS
P.O. Box 6599
Cleveland, OH 44101

*Delaney, P.J.*

For Defendants-Appellees/Cross-
Appellees:

MARK F. FISCHER
MATTHEW J. WALKER
4505 Stephen Circle NW
Suite 100
Canton, OH 44718

{¶1} Plaintiff-Appellant/Cross-Appellee Michael Maynard and Intervenor/ Cross-Appellant AultCare Corporation appeal the April 19, 2012 judgment entry of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2} Defendants-Appellees/Cross-Appellees Thomas K. and Cathy Winters own approximately 20 rental properties. Thomas Winters completes a majority of the repairs on the rental properties because he was a union carpenter for almost 30 years, working on varied construction and remodeling projects.

{¶3} The Winters own residential rental property located at 220 Third Street, New Philadelphia, Ohio. The Winters purchased the three-apartment unit in December 2005. The building was built in the 1920s.

{¶4} The apartment building has a set of interior stairs leading down to the back entrance of the building. The back entrance has a wooden door and a storm door. The storm door is dated from the 1950s or 1960s. It has three panels separated by metal frames. The upper panel was glass; the middle panel was plate glass; and the bottom panel was metal.

{¶5} Plaintiff-Appellant/Cross-Appellee Michael Maynard rented an apartment at 220 Third Street from October 2006 to May 2008. On July 13, 2007, Maynard made contact with the storm door's middle panel with his dominant hand and forearm. The middle panel contained plate glass and shattered on contact, causing lacerations to Maynard's hand and arm. Maynard cannot recall if he fell into the storm door, and if he fell, or how he fell into the storm door.

{¶6} On July 13, 2009, Maynard filed a complaint against the Winters in the Tuscarawas County Court of Common Pleas. In the complaint, Maynard alleged the Winters negligently maintained the rental property by failing to maintain the interior steps causing Maynard's fall into the storm door and the Winters negligently maintained the storm door because it contained plate glass instead of safety glass. Maynard claimed the Winters were liable under a theory of common law negligence and negligence per se under R.C. 5321.04.

{¶7} Maynard voluntarily dismissed his complaint on July 9, 2010. Maynard refiled his complaint on July 8, 2011 raising the same allegations. AultCare Corporation was joined as a party-plaintiff on October 11, 2011. AultCare filed an involuntary complaint asserting its claim in subrogation for medical bills paid on behalf of Maynard.

{¶8} The Winters filed a motion for summary judgment as to all claims asserted by Maynard. The Winters supported their motion for summary judgment with the affidavit of Thomas Winters. Thomas Winters averred he was never notified of a defect in regards to the storm door. Prior to the accident, Thomas Winters had never replaced that storm door or repaired the storm door. Thomas Winters testified he did not know prior to the accident the middle panel of the storm door contained non-safety glass. The Winters also relied upon the expert report of an architect, Richard P. Kraly, who stated that applicable building codes did not apply to the apartment building.

{¶9} Maynard filed a response and leave to introduce his expert report. Maynard relied upon the deposition of Thomas Winters to support his contention there was a genuine issue of material fact precluding judgment as a matter of law. Thomas

Winters testified during the deposition he had over 30 years of experience as a carpenter. He had worked numerous construction and remodeling jobs, which involved the installation of storm doors and storm windows. He was aware in the 1970s that the use of safety glass became mandatory or commonplace. When Thomas Winters repaired the storm door after Maynard's accident, he could only purchase safety glass to replace the plate glass. Thomas Winters, however, could not visually tell the difference between glass and safety glass.

{¶10} The Winters filed their reply and objected to the introduction of Maynard's expert report as being untimely.

{¶11} On April 19, 2012, the trial court issued its judgment entry on the motion for summary judgment and motion for leave to introduce Maynard's expert report. The trial court first denied Maynard's request for leave to introduce the expert report as being untimely under the pretrial and scheduling order. (Maynard does not appeal this decision.) The trial court next found the Winters were entitled to judgment as a matter of law on Maynard's claims for common law and statutory negligence.

{¶12} It is from this decision Maynard now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Maynard raises two Assignments of Error:

{¶14} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT WHEN IT OVERLOOKED GENUINE ISSUES OF MATERIAL FACT REGARDING APPELLEES' ACTUAL AND/OR CONSTRUCTIVE KNOWLEDGE OF A DANGEROUS CONDITION ON APPELLEES' PROPERTY. (JUDGMENT ENTRY, PASSIM)"

{¶15} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE EXTENT IT APPLIED A PRINCIPLE ENUNCIATED IN 'SLIP-AND-FALL' CASES – NAMELY THAT A PLAINTIFF'S INABILITY TO EXPLAIN THE REASON FOR HIS FALL PRECLUDES RECOVERY – TO MR. MAYNARD'S CLAIM THAT APPELLEES WERE NEGLIGENT IN MAINTAINING A DANGEROUS CONDITION – A PLATE-GLASS STORM DOOR – ON THEIR PROPERTY. (JUDGMENT ENTRY AT 12)"

**ANALYSIS**

*STANDARD OF REVIEW*

{¶16} This matter is before the Court upon a ruling on a motion for summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56(C) which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the

motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶17} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶18} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

*I.*

{¶19} Maynard argues in his first Assignment of Error the trial court erred in granting summary judgment in favor of the Winters on the issue of negligence as to the plate glass window in the storm door. Maynard states in his appellate brief that he is not pursuing his cause of action of negligence as to his alleged fall on the stairs. He is only pursuing a claim as to his injuries from breaking the glass in the storm door. Upon our de novo review of the motion for summary judgment, we disagree with Maynard's propositions of law as to negligence for his injuries received from the storm door.

{¶20} Maynard sought to establish negligence claims against the Winters under (1) R.C. 5321 et seq., commonly referred to as the Landlord-Tenant Act or (2) common law negligence.

### Negligence Pursuant to the Landlord-Tenant Act

{¶21} A landlord who is party to a rental agreement must comply with the requirements of R.C. 5321.04(A):

(A) A landlord who is a party to a rental agreement shall do all of the following:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in a safe and sanitary condition[.]

{¶22} A landlord's violation of the duties imposed by this statute constitutes negligence per se. *Robinson v. Bates,* 112 Ohio St.3d 17, 2006–Ohio–6362, 857 N.E.2d 1195, ¶ 23, citing *Sikora v. Wenzel,* 88 Ohio St.3d 493, 2000–Ohio–406, 727 N.E.2d 1277. A landlord, however, "will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora*, *supra* at syllabus.

### Common Law Negligence

{¶23} "A common-law negligence claim requires a showing of (1) a duty owed; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Au v.*

*Waldman*, 5th Dist. No. 2010 CA 112, 2011-Ohio-2233, ¶ 45 citing *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002–Ohio–4210, 773 N.E.2d 1018, ¶ 22. "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adelman v. Timman*, 117 Ohio App.3d 544, 549, 690 N.E.2d 1332 (8th Dist.1997). Determination of whether a duty exists is a question of law for the court to decide, and therefore, is a suitable basis for summary judgment. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989); *Galinari v. Koop,* Clermont App. No. CA2006–10–086, 2007–Ohio–4540, ¶ 10, 13.

{¶24} Under common law, a landlord may be liable to his tenant for "a concealment or failure to disclose known, non-obvious defects * * * failure to perform a covenant of repair; breach of statutory duty; and negligent performance of a contractual or statutory duty to repair." *Odom v. Davis*, 4th Dist. No. 02CA43, 2003-Ohio-3316, ¶ 17 citing *Shump v. First Continental-Robinwood Assoc., Ltd.*, 71 Ohio St.3d 414, 418, 644 N.E.2d 291 (1994). "[U]nder common law[,] a landlord cannot be held liable for negligence unless he has knowledge both of the source of the danger and of the fact that the defect was dangerous." *Id.* "[C]ommon law provides that a landlord does not have a duty to remedy a condition unless he has knowledge of the source of the danger and the fact that the defect was dangerous." *Id.*

### Knowledge

{¶25} The factor to analyze under both R.C. 5321.04 and common law negligence is the landlord's knowledge of the source of the danger and the defect. The source of the danger and defect in this case are not plate glass or storm doors, but the particular storm door with plate glass installed at the apartment building. It is a

factual determination of whether the Winters had knowledge the storm door contained plate glass.

{¶26} The Winters first argue they complied with R.C. 5321.04(A)(1) in that the storm door complied with all applicable building, housing, health, and safety codes. They state the Civ.R. 56 evidence provided in their expert report demonstrates the storm door was in compliance with all applicable building codes. The expert report provided by architect Richard Kraly states that the apartment building is exempt from State of Ohio building codes because of the size of the building. The building and storm door are also exempt because of the age of the building and storm door. A grandfather clause applies to the building and storm door to exempt them from consideration. Maynard concedes the expert report's conclusion as to applicability is accurate.

{¶27} Maynard argues that the Winters should not be excused from liability under R.C. 5321.04 or common law negligence because the Winters knew or should have known of the plate glass in the storm door and the danger it posed. Maynard argues while the Civ.R. 56 evidence in the form of Thomas Winters' affidavit and deposition shows that Winters did not have actual notice that the storm door contained plate glass instead of safety glass, there is a genuine issue of material fact as to whether the Winters had constructive knowledge that the storm door contained plate glass and was dangerous. Because the Winters denied knowledge of the plate glass, the burden then shifts to Maynard to point to evidence in the record that shows a genuine issue of material fact that the Winters had knowledge. *Odom v. Davis*, 4th Dist. No. 02CA43, 2003-Ohio-3316, ¶ 20. Maynard argues that the evidence shows

the Winters had information, other than a visual inspection of the storm door, to give the Winters notice that the storm door contained plate glass. He states that Thomas Winters's work as a carpenter, which gave him familiarity with storm doors and the knowledge that safety glass became commonplace in the 1970s, provided the Winters with constructive knowledge that the storm door dated from the 1950s or 1960s contained plate glass.

{¶28} In support of his argument that the Winters had constructive knowledge of the danger of the plate glass in the storm door resulting in liability, Maynard relies upon *Dawson v. Williamsburg of Cincinnati Mgmt. Co.*, 1st Dist. No. C-981022, 2000 WL 125891 (Feb. 4, 2000). In that case, the First District Court of Appeals reversed the trial court's decision to grant summary judgment where a tenant sued for injuries sustained after the plate glass in a sliding glass door shattered, causing injuries to a child.

{¶29} The evidence in that case showed that building codes did not require the landlord to install safety glass in the sliding glass door. There was Civ.R. 56 evidence presented by expert report and deposition testimony to show there was a genuine issue of material fact as to whether the landlord had knowledge of the dangerous defect of utilizing plate glass in a sliding glass door:

> Gary Hussell, Williamsburg's maintenance manager, testified in his deposition that he had witnessed glass being removed from sliding doors that had been broken, and that the removed glass was not safety glass, but plate glass that had shattered when broken. Dawson's expert stated in his affidavit that the dangers of plate glass in sliding doors were well

publicized in the residential rental industry.  Construing this evidence in the light most favorable to Dawson, we conclude that a genuine issue of fact exists regarding whether Williamsburg breached a duty to Nikisha Dawson by not replacing the old plate glass with safety glass.

*Dawson, supra* at *3.

{¶30} The First District Court of Appeals found this evidence showed, "a genuine issue of material fact would still exist as to whether Williamsburg was negligent in maintaining the plate-glass door by virtue of its knowledge that some of the sliding glass doors were made of plate glass and that plate glass, unlike safety glass, would shatter upon impact.  Under R.C. 5321.04(A)(2), a landlord has a duty to '[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.'  The purpose of the statute is to protect persons using rented residential premises from injuries.  As we have already stated, the failure of a landlord to comply with any of the duties described in R.C. 5321.04(A) renders the landlord liable for injuries proximately caused by the noncompliance."  *Id.*

{¶31} The Fourth District Court of Appeals distinguished *Dawson* from the record in its case, *Odom v. Davis*, 4th Dist. No. 02CA43, 2033-Ohio-3316.  In *Odom*, the Fourth District affirmed the trial court's decision to grant summary judgment in favor of the landlord whose tenant was injured when the sliding plate glass door to the bathtub shattered.  The tenant sued the landlord, arguing the landlord was negligent in maintaining a sliding bathtub door made of plate glass.  The Fourth District found the tenant failed to demonstrate there was a genuine issue of material fact that the landlord had knowledge the bathtub door was made of plate glass.  The court noted

the evidence in *Dawson* demonstrated there was a genuine issue of material fact whether the landlord had knowledge of the defect. In *Odom*, however, the court found the tenants failed to offer similar evidence:

> In contrast, the Odoms did not offer any evidence that Davis had notice based upon observations of similar doors. Rather, the Odoms assert that Davis must have known that the glass in the shower was not safety glass because of the absence of a safety glass marking on the door. Contrary to the Odoms' assertion, evidence that Davis lacked affirmative knowledge about the glass is not equivalent to evidence that Davis actually knew or should have known that the glass was plate glass. Additionally, the Odoms assert that the danger of plate glass is common knowledge. However, even if the danger posed by plate glass is common knowledge that Davis knew or should have known, the Odoms failed to offer any evidence that Davis knew that the shower door was made of plate glass.

*Odom, supra* at ¶ 28.

{¶32} The issue in both cases was whether there was evidence in the record to create a genuine issue of material fact as to whether the landlord knew or should have known the door was not safety glass. We analyze the Civ.R. 56 evidence in the present case in a light most favorable to Maynard to determine if there is a genuine issue of material fact as to whether the Winters knew or should have known that particular storm door contained plate glass. Upon our de novo review, we find the record in this case is more similar to that in *Odom*, rather than *Dawson*. The three

pieces of evidence presented in this case upon summary judgment were the affidavit of Thomas Winters, the deposition of Thomas Winters, and the Winters's expert report.

{¶33} The affidavit of Thomas Winters averred he was responsible for all repairs and maintenance at the apartment building but he had never repaired or replaced the storm door at the apartment building. Prior to Maynard's injuries, Thomas Winters stated he did not know the storm door contained a section of non-safety glass. Thomas Winters was never notified of a defect in the storm door by a tenant or through a building code violation.

{¶34} The deposition of Thomas Winters provided similar information. He testified he had over 30 years experience in the construction industry as a union carpenter. He had previously hung storm doors and storm windows as a carpenter. He knew that storm doors began to use safety glass in the 1970s. After the accident, he replaced the broken panel in the storm door with safety glass because he could not purchase any other type of glass for the storm door. Thomas Winters testified he could not visually tell the difference between plate glass and safety glass.

{¶35} The expert report filed by the Winters opines the storm door was from the 1950s or 1960s. The expert report states the building codes are not applicable to the apartment building and storm door due to the age of those items.

{¶36} The Winters state they had no knowledge, actual or constructive, that the storm door contained plate glass. It is the burden of Maynard to show there is a genuine issue of material fact as to whether the Winters had knowledge of the source of the danger and the defect. The alleged source of the danger in this case was the

plate glass in the storm door located at the apartment building. Reviewing the Civ.R. 56 evidence in a light most favorable to Maynard, we find no genuine issue of material fact that the Winters knew or should have known that the storm door contained plate glass or that the storm door posed a danger. Maynard provided no evidence, other than the general experience of Thomas Winters as a union carpenter, to overcome the Winters's evidence that they had no knowledge of the plate glass in that storm door. We find the Winters have established there is no genuine issue of material fact and are entitled to judgment as a matter of law on the issue of negligence per se under the R.C. 5321.04 or common law negligence.

{¶37} Maynard's first Assignment of Error is overruled.

*II.*

{¶38} Maynard argues in his second Assignment of Error the trial court erred in granting summary judgment in favor of the Winters on the basis of the law applicable to slip and fall cases when Maynard's cause of action was based on the dangerous condition of the plate glass in the storm door.

{¶39} Maynard's complaint alleged the Winters's negligence caused Maynard to fall on the interior steps of the building and the defective condition of the plate glass caused Maynard's injuries. Maynard did not dismiss his negligence theory that negligence caused his fall from his claim. As it was part of the action, the Winters argued the matter in their motion for summary judgment. Maynard, however, argues that he is only pursuing his claim for damages as a result of his injuries from the shattering of the plate glass window in the storm door as a result of the negligence of the Winters in maintaining the storm door with plate glass.

{¶40} An appeal of a summary judgment decision gives the appellate court the unique opportunity to review the motions for summary judgment under a de novo standard of review. As such, we reviewed the motion for summary judgment and responding motions in the same manner at the trial court. On appeal, Maynard argued only the Winters's negligence as to the storm door. Upon our de novo review, we found that Maynard was unable to demonstrate a genuine issue of material fact that the Winters were negligent under a theory of statutory negligence or common law negligence.

{¶41} As such, we find our resolution of the first Assignment of Error to be dispositive of this appeal and it is unnecessary to address Maynard's second Assignment of Error.

{¶42} Maynard's second Assignment of Error is overruled.

## CONCLUSION

{¶43} Upon our de novo review, we overrule Plaintiff-Appellant/Cross-Appellant Michael Maynard and Intervenor/Cross-Appellant AultCare Corporation's first and second Assignments of Error.

{¶44} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Farmer, J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

PAD:kgb

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

MICHAEL MAYNARD, ET AL.              :
                                      :
 Plaintiffs-Appellants/Cross-Appellees :
                                      :
AULTCARE CORPORATION                 :
                                      :

| | | |
|---|---|---|
| Intervenor/Cross-Appellant | : | JUDGMENT ENTRY |
| | : | |
| -vs- | : | CASE NO. 2012 AP 05 0035 |
| | : | |
| THOMAS K. WINTERS, ET AL. | : | |
| | : | |
| Defendants-Appellees/Cross-Appellees | : | |
| | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs to be split between Appellant and Cross-Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE